PEOPLE v FERNANDEZ

Docket No. 76675. Argued June 4, 1986 (Calendar No. 14). Decided
    December 29, 1986.

Stephen R. Fernandez was convicted by a jury in the Recorder's
    Court of Detroit, Thomas E. Jackson, J., of conspiracy to
    commit first-degree murder and aiding and abetting assault
    with intent to commit murder. The Court of Appeals, BEASLEY,
    P.J., and M. J. KELLY and WARSHAWSKY, JJ., affirmed, but
    remanded for resentencing, finding that a life sentence, while
    within the sentencing discretion of the trial court, was not
    mandatory (Docket No. 76117). The people appeal, and the
    defendant cross-appeals.

    In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices BRICKLEY and RILEY, the Supreme Court
*held:*

    A mandatory life sentence is required on conviction of con-
spiracy to commit first-degree murder.

    1. Conviction of conspiracy is punishable by a penalty equal
to that which could be imposed upon the conviction of the
crime that was the subject of the conspiracy. Because convic-
tion of first-degree murder is only punishable by life imprison-
ment, conviction of conspiracy to commit first-degree murder
also must be punished by life imprisonment.

    2. A mandatory life sentence imposed for conspiracy to
commit first-degree murder, even if nonparolable, is not so
excessive as to constitute cruel or unusual punishment; nor
does it violate the Equal Protection Clauses of the Michigan
and United States Constitutions. The punishment is not dispro-
portionate to the crime when viewed in light of the gravity of
the offense, sentences for other crimes in Michigan, sentences

REFERENCES

Am Jur 2d, Criminal Law §§ 625-627, 629, 630.

Am Jur 2d, Homicide §§ 549, 552, 556.

Length of sentence as violation of constitutional provisions prohibit-
    ing cruel and unusual punishment. 33 ALR3d 335.

See also the annotations in the Index to Annotations under Sen-
    tence and Punishment.

for the same crime in other states, and the policies underlying the punishment.

3. There was no need to instruct the jury on conspiracy to commit second-degree murder. Such a crime, even if hypothetically possible, was not supported by the facts of the case.

4. Remand is required for briefing and decision on the issue whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole under MCL 791.234(4); MSA 28.2304(4), and, if so, the proper retroactive effect of such a decision.

Reversed and remanded.

Justice CAVANAGH, joined by Justice ARCHER, dissenting, stated that the Legislature did not intend that the statutory division of common-law murder into first and second degree be assimilated into the conspiracy statute. Conspiracy to commit first-degree murder was not intended to be a crime distinct from conspiracy to commit second-degree murder; rather, it seems consistent that conspiracy to commit murder was intended to punish conspiracy to commit common-law murder— by life or any term of years. Thus, the law precluding parole consideration of first-degree murder convictions would be inapplicable, a conspiracy conviction not being based on the statutory crime of first-degree murder.

Justice LEVIN, writing separately, stated that the conspiracy conviction should be affirmed as conspiracy to commit murder, and the cause remanded for resentencing. The trial court erred in refusing to instruct the jury with regard to conspiracy to commit murder, graded under the Penal Code as second-degree murder. The offense prohibited by law in all conspiracies to commit murder is murder, without specification of a degree. Unless a trial by jury is waived, it is the jury, upon finding a person guilty of murder, that must ascertain in its verdict the degree.

In grading murder into murder of the first and second degree, in providing for a mandatory life sentence for first-degree murder, in confiding to the judge discretion to sentence for any term of years up to life where the defendant is convicted of second-degree murder, in providing that a jury is to decide whether the degree of the offense is first or second, the Legislature contemplated that the jury—not the judge—is to decide whether a mandatory life sentence must be, or a less severe sentence might be, imposed on a person found by the jury to have committed the offense of murder.

The Penal Code requires the jury to assess the actor's state of mind at the time of a killing; it does not provide for the jury to

assess the actor's state of mind at the time an agreement or conspiracy to murder may have been entered into. Since only the jury can, consistent with the code, grade the offense as first degree and thereby authorize a mandatory life sentence, absent a killing there can be no jury determination whether there was premeditation and deliberation and no finding of first-degree murder.

If the agreement to murder is performed, the conspirators, because they presumably acted with ample premeditation and deliberation, might be convicted of first-degree murder, but it does not follow that the murder that was conspired must, or even might, be characterized as a matter of law, without jury assessment, as first-degree murder.

143 Mich App 388; 372 NW2d 567 (1985) reversed.

1. CONSPIRACY — HOMICIDE — FIRST-DEGREE MURDER — SENTENCING.
A mandatory life sentence is required on conviction of conspiracy to commit first-degree murder (MCL 750.316, 750.157a; MSA 28.548, 28.354[1]).

2. CONSPIRACY — HOMICIDE — FIRST-DEGREE MURDER — SENTENCING.
A mandatory life sentence imposed for conspiracy to commit first-degree murder, even if nonparolable, is not so excessive as to constitute cruel and unusual punishment; nor does it violate the Equal Protection Clauses of the Michigan and United States Constitutions (US Const, Am VIII; Const 1963, art 1, § 16; MCL 750.316, 750.157a; MSA 28.548, 28.354[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*) for the defendant.

BOYLE, J. We granted leave in this case to consider whether MCL 750.157a; MSA 28.354(1) requires a mandatory nonparolable life sentence for persons convicted of conspiracy to commit first-degree murder, and whether conspiracy to commit *second-degree* murder is a lesser included offense

of conspiracy to commit first-degree murder for which instruction should have been given in this case. We hold that a mandatory life sentence is required on conviction of conspiracy to commit first-degree murder, and that on the facts of this case no evidence existed to support a finding of conspiracy to commit second-degree murder. We remand this case to the Court of Appeals for consideration of whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder under MCL 750.157a; MSA 28.354(1) is eligible for parole consideration under MCL 791.234(4); MSA 28.2304(4).

I

FACTS

The facts leading up to this appeal are ably set out in the opinion below, *People v Fernandez,* 143 Mich App 388, 390-392; 372 NW2d 567 (1985):

> Defendant and complainant, Janet Fernandez, were married in 1970. They had one daughter, Brandy, who was born in 1978. Though the marriage went without undue difficulty during the first few years, the relationship ran into trouble in 1981. In December of that year, Janet Fernandez told defendant . . . that she wanted a divorce. [The relationship became very tense and, in a telephone conversation on January 17, 1982, the defendant] threatened to kill her or throw acid in her face. On another occasion, defendant twisted his wife's arms and told her that there wasn't going to be a divorce. She moved to her mother's house and filed for divorce on January 29, 1982. Between January 22 and April, 1982, she had little contact with defendant.
>
> In May, 1982, complainant wife met with defendant to discuss their daughter, Brandy. Defendant told his wife that he did not know what he might

do if he ever caught complainant with anyone else. On June 24, 198[2], still maintaining that there just could not be a divorce, defendant asked her if she still worked in the morning and then told her that he could either kill her and go to jail, or he could have it done, and all the problems would be solved.

The next morning, June 25, 1982, complainant was driving her stepfather's car to work when she heard a noise like a brick or a rock hitting the passenger side of the car. She looked back and saw a man wearing a military camouflage jacket standing on the street, near an alley, holding a handgun. Complainant went to work and called 911, the police emergency number. On July 27, 1982, complainant left her mother's house in the morning to go to work. As she came down the steps, she noticed that one of the tires on her car was flat. When she looked up, two men wearing military jackets came running toward her. She screamed, and one of the men stabbed her with a knife. As a result of that incident, complainant had surgery and spent six days in the hospital. Subsequently, she identified Henry Reyna, Jr., as the man who had stabbed her.

Reyna was arrested on September 13, 1982, and another suspect, Migual "Pete" Figueroa, was apprehended on September 14. Migual Figueroa pled guilty to assault with intent to murder and testified for the prosecution in the within case. He testified that, after the failure of the June, 1982, attempt on complainant's life, he agreed with defendant to find a hit man to kill complainant wife, Janet Fernandez. Pursuant to that plan, he contacted Henry Reyna, who eventually agreed to do the job.

Reyna also pled guilty to assault with intent to murder and testified for the prosecution. He stated that he knew defendant and Figueroa, and that Figueroa had approached him and told him that he knew a guy that wanted somebody dead and that that person was willing to pay two grand for it. Reyna testified that Figueroa was supposed to

receive $500 to serve as the go-between. Reyna contacted a man he knew, Omar, and offered him $500 to help with the job. Reyna testified that on July 27, 1982, Omar snatched complainant's purse and he (Reyna) stabbed her with a knife.

Defendant testified in his own behalf and maintained that he had never agreed with anyone, or solicited, incited or induced anyone, to kill his wife. The jury did not buy defendant's version and, as indicated, found him guilty.

Mr. Fernandez was convicted of conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1) and MCL 750.316; MSA 28.548, and aiding and abetting an assault with intent to commit murder, MCL 750.83; MSA 28.278. The trial judge sentenced him to mandatory life imprisonment for the conspiracy conviction and 120 to 240 months for the assault conviction. The Court of Appeals affirmed, but remanded for resentencing, finding that a life sentence, while within the sentencing discretion of the trial court, was not mandatory.

## II

### MANDATORY NONPAROLABLE LIFE

The Court of Appeals defined the critical issue as follows: "[W]here no murder has been committed, is it *mandatory* that a defendant convicted of conspiracy to commit murder in the first degree, receive a nonparolable life sentence?" *Fernandez, supra,* p 397. The Court answered the question in the negative and remanded for resentencing. The panel's reasoning was based upon an intricate analysis of the conspiracy statute, MCL 750.157a; MSA 28.354(1), the first-degree murder statute, MCL 750.316; MSA 28.548, the indeterminate sentence statute, MCL 769.8; MSA 28.1080, and the parole statute, MCL 791.233; MSA 28.2303.

We believe that the issue posed by the Court of Appeals is actually two issues, each of which requires separate treatment. The first issue is whether the conspiracy statute, MCL 750.157a; MSA 28.354(1), requires a life sentence for conspiracy to commit first-degree murder. We hold that it does. The second issue is whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder under MCL 750.157a; MSA 28.354(1) is eligible for parole under the "lifer law," MCL 791.234(4); MSA 28.2304(4). We remand that issue to the Court of Appeals for consideration.

A. DOES CONVICTION OF CONSPIRACY TO COMMIT FIRST-DEGREE MURDER REQUIRE A LIFE SENTENCE?

The conspiracy statute, MCL 750.157a; MSA 28.354(1), defines both the crime and the punishment:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:
> (a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section *shall be punished by a penalty equal to that which could be imposed* if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [Emphasis added.]

The Legislature had a variety of different punishment schemes from which it could choose. The comments to the Model Penal Code describe the

types of conspiracy penalty provisions in existence in the early 1960's:

> There were four predominant types of provisions, only the last two enjoying significant support in the revised codes and proposals. A number of states provided that conspiracy was a misdemeanor regardless of its object. Others fixed the maximum sentence for a conspiracy at a constant level regardless of the conspiratorial objective. Still others set different ranges or maxima for conspiracies to commit different classes of substantive crimes. A few made the maximum for conspiracy the same as the maximum provided for the offense that is the objective. [Model Penal Code, § 5.05, commentary at 488-489 (1985 official draft).]

The language of the statute makes it clear that a person convicted of conspiracy "shall be punished by a penalty equal to that which could be imposed" upon conviction of the target offense—the crime that was the subject of the conspiracy. The legislative history of § 157a, enacted as 1966 PA 296, further illustrates the stringent penalty intended by the Legislature for a conspiracy conviction.

House Bill 3571, the bill which ultimately became 1966 PA 296, was originally adopted by the House with a maximum penalty of twenty years in prison and a discretionary $10,000 fine for conspiracies to commit target offenses punishable by life sentences or any term of years up to and including life. Conspiracy convictions for target offenses punishable by five to twenty years were to be punished the same as the target offense plus a discretionary $10,000 fine.[1] The Senate amended the relevant language to that ultimately adopted:

---

[1] The relevant language of HB 3571, as passed by the House on April 22, 1966, provided:

[I]f commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [1966 Journal of the Senate 1429; 1966 Journal of the House 3185.]

Thus, both the plain meaning of the language of § 157a and the legislative history of the provision support the conclusion that a person convicted of conspiracy should receive the same penalty as someone convicted of the target offense.

A person convicted of first-degree murder under MCL 750.316; MSA 28.548 is punishable only by life imprisonment:

Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and

---

Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:

(A) If commission of the offense prohibited by law is punishable by life imprisonment or any term of years up to and including life imprisonment, the person convicted under this section shall be punished by imprisonment in the state prison for not more than 20 years and a fine of not more than $10,000.00, or both such fine and imprisonment.

(B) If commission of the offense prohibited by law is punishable by imprisonment for 5 years but less than [20 years] the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [1966 Journal of the House 2131-2132.]

The bracketed information was added on the floor of the House before the House vote. See 1966 Journal of the House 2133.

premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first-degree, and *shall be punished by imprisonment for life.* [Emphasis added.]

The inescapable conclusion, given the plain meaning of §§ 157a and 316, is that a person convicted of conspiracy to commit first-degree murder must be sentenced to life imprisonment. We so hold.

B. DOES A LIFE SENTENCE IMPOSED UNDER MCL 750.157a; MSA 28.354(1) QUALIFY FOR PAROLE CONSIDERATION UNDER MCL 791.234(4); MSA 28.2304(4)?

While the possibility of parole was an underlying concern in the Court of Appeals and in the briefs submitted to this Court, the Court below and the parties' briefs assumed that once a life sentence was imposed by the conjunction of §§ 157a and 316, there was no possibility of parole. At oral argument, the idea first arose that such a life sentence could qualify under MCL 791.234(4); MSA 28.2304(4), the "lifer law," for parole consideration after ten years.[2]

MCL 791.234(4); MSA 28.2304(4) provides:

A prisoner under sentence for life or for a term of years, *other than prisoners sentenced for life for murder in the first degree* and prisoners sentenced for life or for a minimum term of imprisonment for a major controlled substance offense, who has served 10 calendar years of the sentence is subject to the jurisdiction of the parole board and may be

[2] During oral argument, the prosecutor indicated that he would construe MCL 791.234; MSA 28.2304 to provide that persons convicted and sentenced to life imprisonment for conspiracy to commit first-degree murder were subject to the jurisdiction of the parole board after ten years.

released on parole by the parole board, subject to the following conditions . . . .[3] [Emphasis added.]

While MCL 791.234(4); MSA 28.2304(4) specifically excludes those sentenced for murder in the first-degree from the provisions of the "lifer law,"[4] there is no such exclusion for those sentenced to life for conspiracy to commit first-degree murder under MCL 750.157a; MSA 28.354(1). Thus, as the prosecutor observed at oral argument, there is no apparent reason in the "lifer law" itself that would preclude the possibility of parole in Mr. Fernandez' case.

[3] The conditions set forth in MCL 791.234(4); MSA 28.2304(4) include the following:

(a) One member of the parole board shall interview the prisoner at the conclusion of 4 calendar years of the sentence and biennially thereafter until such time as the prisoner is paroled, discharged, or deceased.

(b) A parole shall not be granted a prisoner so sentenced until after a public hearing held in the manner prescribed for pardons and commutations in sections 44(d) to 44(f) and 45. Notice of the public hearing shall be given to the sentencing judge or the judge's successor in office, and parole shall not be granted if the sentencing judge, or the judge's successor in office, files written objections to the granting of the parole within 30 days of receipt of the notice of hearing. The written objections shall be made part of the prisoner's file.

(c) A parole granted under this subsection shall be for a period of not less than 4 years and subject to the usual rules pertaining to paroles granted by the parole board. A parole ordered under this subsection shall not become valid until the transcript of the record is filed with the attorney general whose certification of receipt of the transcript shall be returnable to the office of the parole board within 5 days. Except for medical records protected by section 2157 of Act No. 236 of the Public Acts of 1961, being section 600.2157 of the Michigan Compiled Laws, the file of a prisoner granted a parole under this subsection shall be a public record.

(d) A parole shall not be granted under this subsection in the case of a prisoner who is otherwise prohibited by law from parole consideration. In such cases, the interview procedures in section 44 shall be followed.

[4] This exclusion of life sentences for first-degree murder from parole effectively makes a life sentence under MCL 750.316; MSA 28.548 nonparolable.

In 1978, however, MCL 791.233(3); MSA 28.2303(3) was amended by 1978 PA 81 to incorporate changes in the sentencing and parole policies of this state required by Proposal B. Proposal B reflected the public's desire to prohibit parole in certain cases until the minimum sentence imposed by the sentencing judge, unreduced for good time, special good time, or special parole, was actually served.[5] The effect of Proposal B upon those serving life sentences was, until 1984, interpreted to invalidate the "lifer law" because the minimum sentence of a life sentence is life. The reasoning was that under Proposal B, there is no opportunity for parole because life is the minimum, as well as the maximum, sentence. See OAG, 1979-1980, No 5583, p 438 (October 16, 1979).

In December 1984, however, this Court held that Proposal B had no application to fixed or life sentences:

We hold that Proposal B applies only to indeterminate sentences. Its express provisions are binding on the parole board, and the board may not release on parole, before the expiration of the

[5] The official ballot wording for Proposal B read as follows:

Proposal to Prohibit the Granting of a Parole to a Prisoner Convicted of Certain Crimes Involving Violence or Injury to Person or Property Until at Least After the Minimum Sentence Has Been Served. The Proposed Law would:

1) List the crimes to which this law applies, which are crimes of violence or crimes resulting in injury to persons or damage to property.

2) Prohibit the Parole Board from granting a parole to a prisoner serving a sentence for conviction of one of these crimes until after the completion of the minimum sentence imposed on the prisoner.

3) Provide that in cases involving conviction for one of these crimes that the minimum sentence cannot be diminished by granting of good time, special good time or special parole. [OAG, 1981-1982, No 5875, pp 118, 120 (April 16, 1981).]

minimum term fixed by the sentencing judge, any person given an indeterminate sentence for the crimes specified after the proposal's effective date. It has no application to a fixed or life sentence. [*People v Johnson,* 421 Mich 494, 498; 364 NW2d 654 (1984).]

Thus, there is no apparent restriction arising from Proposal B on application of the "lifer law" to a life sentence imposed for conspiracy to commit first-degree murder.

The current practice of the Parole Board is that persons sentenced to life for conspiracy to commit first-degree murder are, like those convicted of first-degree murder, barred from parole. Because this issue was not briefed by the parties and there has been no opportunity for amici curiae like the Parole Board to file briefs, we remand this case to the Court of Appeals for briefing and decision on this issue. We also direct briefing on the proper retroactive effect of a decision that MCL 791.234(4); MSA 28.2304(4) allows parole consideration after ten years have been served of a life sentence imposed for conviction of conspiracy to commit first-degree murder under MCL 750.157a; MSA 28.354(1). The ramifications of a decision on this issue are broad enough to require the full attention of the parties and various potential amici curiae.

III

ALLEGED CONSTITUTIONAL VIOLATIONS

Defendant alleges that a mandatory life sentence under MCL 750.157a; MSA 28.354(1) violates the Equal Protection Clauses of the federal and Michigan Constitutions. He also argues that a mandatory life sentence constitutes cruel and unu-

sual punishment under both constitutions. We hold that a mandatory life sentence, even assuming arguendo that it is nonparolable, imposed for conspiracy to commit first-degree murder does not constitute cruel and unusual punishment, nor does it violate the Equal Protection Clauses of the Michigan or United States Constitutions.

A. CRUEL AND UNUSUAL PUNISHMENT

In analyzing Mr. Fernandez' constitutional challenge to the validity of the punishment contained in MCL 750.157a; MSA 28.354(1), we must first acknowledge the deference due the legislative branch in matters such as determining the appropriate punishments for particular crimes. As the California Supreme Court has observed,

> [A] court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. While these intrinsically legislative functions are circumscribed by the constitutional [prohibition against cruel or unusual punishment], the validity of enactments will not be questioned "unless their unconstitutionality clearly, positively and unmistakably appears." [*People v Wingo,* 14 Cal 3d 169, 174; 121 Cal Rptr 97; 534 P2d 1001 (1975). Citations omitted.]

The United States Supreme Court recently set out the following factors for evaluating whether a sentence is unconstitutionally excessive and therefore violates the Eighth Amendment's prohibition against cruel and unusual punishment:[6]

---

[6] The Eighth Amendment of the United States Constitution provides:

In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. [*Solem v Helm,* 463 US 277, 292; 103 S Ct 3001; 77 L Ed 2d 637 (1983).]

In *People v Lorentzen,* 387 Mich 167, 181; 194 NW2d 827 (1972), this Court used a similar analysis in determining that a mandatory twenty-year sentence for the sale of marijuana was so excessive that it shocked the conscience of the Court and constituted cruel or unusual punishment.[7] This Court considered the gravity of the offense and the sentences imposed for other statutory offenses, *id.,* pp 171-178, the sentences imposed by other states for the same offense, *id.,* pp 178-179, and the penological purpose of the challenged punishment, *id.,* pp 179-181.

Applying these tests to the sentence in question, we find that a mandatory life sentence, even if nonparolable, imposed for conspiracy to commit first-degree murder is not so excessive as to constitute cruel and unusual punishment. See, generally, Note, *Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment,* 33 ALR3d 335, §§ 7-8; Anno: *Validity of statutes prohibiting or restricting pa-*

Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.

[7] Const 1963, art 1, § 16 provides:

Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained.

*role, probation, or suspension of sentence in cases
of violent crimes,* 100 ALR3d 431, §§ 2-5.

Conspiracy to commit first-degree murder is an
extremely serious offense, perhaps exceeded only
by first-degree murder itself. In *People v Hall,* 396
Mich 650; 242 NW2d 377 (1976), this Court found
that a mandatory nonparolable life sentence was
proportionate to the crime of felony murder. Con-
spiracy can be as dangerous as a completed offense
because it may give rise to a coöperation among
criminals that is a special hazard:

> The heart [of the concept of conspiracy] lies in
> the fact—or at least the assumption—that collec-
> tive action toward an antisocial end involves a
> greater risk to society than individual action to-
> ward the same end. [Comment, *Developments in
> the law: Criminal conspiracy,* 72 Harv L R 920,
> 923-924 (1959).]

The United States Supreme Court noted the spe-
cial dangers of conspiracy in *Callanan v United
States,* 364 US 587, 593-594; 81 S Ct 321; 5 L Ed 2d
312 (1961):

> Concerted action both increases the likelihood
> that the criminal object will be successfully at-
> tained and decreases the probability that the indi-
> viduals involved will depart from their path of
> criminality. Group association for criminal pur-
> poses often, if not normally, makes possible the
> attainment of ends more complex than those
> which one criminal could accomplish. Nor is the
> danger of a conspiratorial group limited to the
> particular end toward which it has embarked.
> Combination in crime makes more likely the com-
> mission of crimes unrelated to the original purpose
> for which the group was formed. In sum, the
> danger which a conspiracy generates is not con-
> fined to the substantive offense which is the imme-
> diate aim of the enterprise. [Citations omitted.]

In enacting MCL 750.157a; MSA 28.354(1), the Legislature decided that conspiracy to commit a given offense was as serious as the actual commission, or that the conspiracy was sufficiently serious to merit the same punishment. We cannot agree with defendant that the mere failure of his coconspirators to successfully kill defendant's wife makes the gravity of the offense significantly less than the severity of the punishment.

A comparison of the other crimes in Michigan which carry a mandatory life sentence does not change our conclusion. One example is MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), which requires a mandatory life sentence for a person convicted of the manufacture, delivery, or possession with intent to deliver or manufacture 650 grams or more of a controlled substance. MCL 333.7401(3); MSA 14.15(7401)(3) provides that such life imprisonment is nonparolable. MCL 750.316; MSA 28.548 requires a mandatory life sentence for those convicted of homicides occurring during specified felonies, as well as for wilful and premeditated murder. MCL 750.544; MSA 28.812 imposes a mandatory life sentence for treason, and MCL 750.207; MSA 28.404 imposes a mandatory, nonparolable life sentence for placing explosives with intent to destroy which causes injury to the person. We cannot say that a conspiracy to commit first-degree murder such as occurred in this case is so much less culpable than these offenses as to constitutionally invalidate a mandatory life sentence. The various statutory offenses imposing mandatory life sentences include potentially nonviolent crimes (i.e., treason), crimes resulting in an injury less than death (placing explosives with intent to destroy), as well as crimes lacking a specific intent to kill.

The third factor in the *Solem* and *Lorentzen*

analyses, the sentences imposed by other jurisdictions for the same offense, does not require a finding of disproportionality. Four other states, South Dakota,[8] Wyoming,[9] Arizona,[10] and Idaho,[11] impose a mandatory life sentence for conspiracy to commit first-degree murder. In South Dakota[12] and Wyoming,[13] the life sentence is nonparolable. When Michigan is included with the other four, ten percent of the states impose a mandatory life sentence for conspiracy to commit first-degree murder. While most of the states impose a less harsh sentence, a substantial number impose the same sentence as that carried by the substantive target offense.

The final factor considered by us in *Lorentzen*, the penological policy of a given sentence, also does not require a finding of excessive punishment in this case. In *Lorentzen, supra*, p 180, we listed some of the modern policies behind criminal penalties:

> [R]ehabilitation of the individual offender, society's need to deter similar proscribed behavior in others, and the need to prevent the individual offender from causing further injury to society.

In *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), we noted the same considerations, plus the additional factor of punishing the wrongdoer:

> In *Williams v New York*, 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949), certain basic considerations were found to be proper in determining an

---

[8] SD Codified Laws Ann 22-3-8; 22-6-1; 22-16-12.

[9] Wy Stat Ann, §§ 6-1-303; 6-1-304; 6-2-101.

[10] Ariz Rev Stat, § 13-1003.

[11] Idaho Code, §§ 18-1701, 18-4004.

[12] SD Codified Laws Ann 24-15-4.

[13] Wy Stat Ann, § 7-13-402(a).

appropriate sentence: (a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.

The rehabilitative function of sentences, with an eye towards returning the offender to society at a future time, is not present in nonparolable life sentences. However, this does not mean that a mandatory life sentence, even if nonparolable, must fail. Other policies, such as deterrence of others, deterrence of the offender, or punishment of the offender, may suffice to deflect a cruel and unusual punishment challenge. In the instant case, the fact that a conspiracy conviction requires the same punishment as the substantive target offense carries the message to potential wrongdoers that conspiratorial agreements involve substantial risks and dangers. This is a rational deterrence effort. Where a crime involves advance planning, such as premeditated murder and conspiracy, the possibility of deterring the potential wrongdoer from engaging in the illicit activity by a stringent penalty is more realistic than in crimes committed on impulse. Furthermore, a life sentence certainly protects society at large from an offender during the time of imprisonment. Finally, the retributive punishment factor is a valid consideration in cases such as this, where the potential harm to society is great.

Thus, we find that the punishment of life imprisonment, even if nonparolable, is not cruel and unusual punishment under the federal or Michigan Constitutions. The punishment, while strong, is not disproportionate to the crime when viewed in light of the gravity of the offense, sentences for other crimes in Michigan, sentences for the same crime in other states, and policies behind punishment.

## B. EQUAL PROTECTION

Defendant also urges that the punishment of life imprisonment denies him equal protection under the Michigan[14] and federal[15] constitutions because he is penalized the same for conspiracy to commit first-degree murder as he would be for murder itself, although the behavior was, in his view, less culpable. We disagree. We cannot say that the legislative choice to impose the same punishment for conspiracy as is required for the target offense is irrational. As discussed above, the legislative decision is supported by deterrence and punitive objectives. Therefore, we hold that a mandatory life sentence, even if nonparolable, does not violate the Equal Protection Clauses of the federal or Michigan Constitutions.

### IV

#### CONSPIRACY TO COMMIT SECOND-DEGREE MURDER

Mr. Fernandez also argues that conspiracy to commit second-degree murder is a lesser offense that is necessarily included in conspiracy to commit first-degree murder, and therefore that the trial judge, upon defendant's request, was required to instruct the jury on conspiracy to commit second-degree murder as well as conspiracy to commit first-degree murder. We hold that there was no need to give an instruction on conspiracy to commit second-degree murder because such a crime, even if hypothetically possible, was not supported by the facts in this case.[16]

---

[14] Const 1963, art 1, § 2 provides that "[n]o person shall be denied the equal protection of the laws . . . ."

[15] US Const, Am XIV, provides that no state may "deny to any person within its jurisdiction the equal protection of the laws."

[16] Justice LEVIN says that this opinion is a holding that conspiracy

The Court of Appeals below held that a conspiracy to commit second-degree murder is logically impossible, since the plan of the conspiracy supplies the premeditation and deliberation needed to make a murder one of first degree. Therefore, no instruction concerning a nonexistent crime was possible. *Fernandez, supra,* p 396.

While a few other jurisdictions have allowed convictions for conspiracy to commit second-degree murder to stand,[17] only the California courts have expressly discussed whether such a crime can logically exist. In *People v Horn,* 12 Cal 3d 290; 115 Cal Rptr 516; 524 P2d 1300 (1974), the California Supreme Court held that evidence of diminished capacity could negate the specific intent required for conspiracy to commit first-degree murder, reducing the crime to conspiracy to commit second-degree murder or manslaughter, in the appropriate case. *Id.,* pp 298-300. See, generally, Anno: *Modern status of the rules as to voluntary intoxication as defense to criminal charge,* 8 ALR3d 1236. In *People v Croy,* 41 Cal 3d 1, 22; 221 Cal Rptr 592; 710 P2d 392 (1985), the court upheld the following instructions which describe the effect of diminished capacity upon degrees of homicidal conspiracy:

---

to commit murder "can never be second-degree murder." *Post,* p 351. In reply, it need only be observed that we have noted that, "even if hypothetically possible," there was no need to give an instruction on conspiracy to commit second-degree murder because the facts in this case did not support such a charge.

[17] See *State v Barrett,* 132 Ariz 106; 644 P2d 260 (1981), modified 132 Ariz 88; 644 P2d 242 (1982) (murder planned while under the influence of Quaaludes and cocaine); *People v Croy,* 41 Cal 3d 1; 221 Cal Rptr 592; 710 P2d 392 (1985) (murder planned while under the influence of drugs and alcohol); *People v LaPlant,* 670 P2d 802 (Colo App, 1983) (appellate court refused to consider whether conspiracy to commit second-degree murder could exist); *Powlowski v State,* 467 So 2d 334 (Fla App, 1985); *Louisiana v Bridges,* 480 So 2d 926 (La App, 1985) (the defendant pled guilty of conspiracy to commit second-degree murder); *Commonwealth v Fortune,* 305 Pa Super 441; 451 A2d 729 (1982) (conspiracy to commit second-degree murder, where felony murder is included in second-degree murder).

"In connection with the offense of Conspiracy to
Commit Murder, you must determine whether
there was a conspiracy, and if so, whether the
conspiracy was to commit first degree murder,
second degree murder, voluntary manslaughter or
involuntary manslaughter.

"Hence, if the defendants, due to diminished
capacity caused by intoxication, did not have the
capacity to form the mental state necessary to
premeditate murder, they cannot be found guilty
of conspiracy to commit first degree murder, but
may be found guilty of conspiracy to commit sec-
ond degree murder.

"If the defendants, due to diminished capacity
caused by intoxication, did not have the capacity
to form the mental state necessary to harbor
malice aforethought, they cannot be guilty of con-
spiracy to commit murder, but may be guilty of
conspiracy to commit voluntary manslaughter.

"Finally, if the defendants, due to diminished
capacity caused by intoxication, did not have the
capacity to form the mental state necessary to
harbor malice aforethought and intention to kill,
they cannot be guilty of conspiracy to commit
voluntary manslaughter, but may be guilty of
conspiracy to commit involuntary manslaughter."

While the California rule of the effect of dimin-
ished capacity on degrees of homicides varies sig-
nificantly from the Michigan rule, see *People v
Langworthy,* 416 Mich 630; 331 NW2d 171 (1982)
(voluntary intoxication only negates specific intent,
not general intent), the possibility exists under
Michigan law that diminished capacity might pos-
sibly militate for the existence of the charge of
conspiracy to commit second-degree murder. We do
not rule on this question because no allegations of
diminished capacity were made in this case. In-
deed, Mr. Fernandez steadfastly denied any com-
plicity in the conspiracy to murder his wife.

On the facts of this case, there was no basis for

a jury to find a conspiracy to commit second-degree, rather than first-degree, murder. No allegations of diminished capacity were made, and the conspiracy involved a target offense of "[m]urder which is perpetrated by means of . . . lying in wait . . . ," defined in MCL 750.316; MSA 28.548 as first-degree murder. As the California Supreme Court said in *Horn, supra,* p 300:

> Thus if defendants here conspired to commit murder, . . . that murder was a first-degree murder. On this record a verdict of conspiracy to commit second-degree murder would be contrary to law.

Therefore, the trial court's refusal to instruct the jury in the instant case on conspiracy to commit second-degree murder was not error.

v

CONCLUSION

We hold that a mandatory life sentence is required under MCL 750.157a; MSA 28.354(1) on conviction of conspiracy to commit first-degree murder. We remand the case to the Court of Appeals for briefing and decision on whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration under MCL 791.234(4); MSA 28.2304(4) and, if so, the proper retroactive effect of such a decision. Finally, we hold that the trial court did not err in this case in refusing to instruct the jury on conspiracy to commit second-degree murder.

WILLIAMS, C.J., and BRICKLEY and RILEY, JJ., concurred with BOYLE, J.

CAVANAGH, J. (*dissenting*). For many years, Michigan had no conspiracy statute as such. At common law, a conspiracy was an indictable offense, albeit a misdemeanor. *People v Tenerowicz,* 266 Mich 276, 282; 253 NW 296 (1934). Early on, the Michigan Supreme Court decided that even though only a misdemeanor at common law, the following statute made conspiracy a five-year felony:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court. [MCL 750.505; MSA 28.773.]

See also *People v Smith,* 296 Mich 176, 180; 295 NW 605 (1941); *People v Beasley,* 370 Mich 242, 246; 121 NW2d 457 (1963).

In apparent recognition of the anomaly that even a conspiracy to commit a harmless misdemeanor could, in theory, be punished by five years in prison, the Legislature in 1966 enacted a conspiracy statute providing for varying punishment depending upon the object of the conspiracy. The statute states, in relevant part:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:
> (a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could

be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [MCL 750.157a; MSA 28.354(1).]

Finally, it is necessary to also keep in mind the public policy of this state which favors indeterminate sentencing for crimes. MCL 769.8; MSA 28.1080 provides, in part:

When a person is convicted for the first time for the commission of a felony, and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.

It was this public policy which the Court enforced in *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972).

In this case, we must discern the legislative intent when the murder, conspiracy, and indeterminate sentence statutes intersect. There are several factors which help resolve this.

First, the Court should consider two well-established principles of statutory construction. In construing criminal statutes, a guiding principle is lenity. *People v Bergevin,* 406 Mich 307, 311; 279 NW2d 528 (1979). The principle of lenity guides in both determining the criminality of conduct as well as the appropriate punishment. In addition, a statute should be construed so as not to produce irrational or arbitrary results, or a result which would be inconsistent with the purposes and poli-

cies of the act in question. *Salas v Clements,* 399
Mich 103, 109; 247 NW2d 889 (1976).

Second, the history of the common law in Michigan's criminal code shows a strong policy to punish inchoate offenses less severely than the substantive offense. A conspiracy to commit an offense was only a misdemeanor at common law. Likewise, persons who attempt to commit an offense face a drastically reduced sentence over those who actually commit the crime. MCL 750.92; MSA 28.287.

Applying the foregoing principles, I would conclude that the Legislature did not intend that the statutory division of common-law murder into first and second degree be assimilated into the conspiracy statute. While murders themselves are punished pursuant to first and second degree, I do not think the Legislature intended to make conspiracy to commit first-degree murder a crime distinct from conspiracy to commit second-degree murder. It seems more consistent with reason and the probable legislative intent that the Legislature, in the conspiracy statute, intended to punish one crime—that of conspiracy to commit common-law murder. It would be punishable by a sentence of life or any term of years. In turn, the "lifer law," precluding parole consideration of first-degree murder convictions, would be inapplicable because the conspiracy conviction would not be based on the statutory crime of first-degree murder, to which the lifer law refers.

Support for such an interpretation can be found in the statute punishing assault with intent to murder. It makes no distinction between first- and second-degree murder:

> Any person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in

the state prison for life or any number of years.
[MCL 750.83; MSA 28.278.]

In *People v Scott,* 6 Mich 287 (1859), the Court
discussed the statutory distinction between first-
and second-degree murder, as it applied to assault
with intent to murder. The Court held that a
murder amounting to either first or second degree
was sufficient to complete the assault offense. In a
concurring opinion, Justice CHRISTIANCY explained
that the statutory murder distinction was relevant
only in murder, not assault, prosecutions:

> The [murder] statute has not altered the com-
> mon law definition of murder; but, recognizing it,
> has simply *divided it into classes, or degrees of
> enormity,* for the purpose of apportioning the pun-
> ishment; and this *only when the prosecution is for
> murder, eo nomine. . . .*
> Perhaps the more appropriate charge, because
> the more simple, less difficult, and more easily
> intelligible, would have been to give the jury a
> definition of *murder at common law,* and to have
> instructed them that if they should find the pris-
> oner committed the assault with intent to kill, and
> that the circumstances were such that, if death
> had ensued, the killing would have constituted
> murder under this common law definition, they
> should find him guilty, otherwise, not guilty. [Em-
> phasis added. 6 Mich 296-297.]

I think the reasoning found in *Scott* is particularly
analogous to the present case, and supports a
conclusion that the conspiracy statute likewise
refers to common-law murder. Such an interpreta-
tion would eliminate the problem of deciding
whether conspiracy to commit second-degree mur-
der can exist, and whether, pursuant to this possi-
bility, an instruction in accord with *People v Jen-
kins,* 395 Mich 440; 236 NW2d 503 (1975), is
required.

If the statutory distinctions between first- and second-degree murder are applied to conspiracy, it would do violence to the express statutory language of the conspiracy statute *not* to sentence a defendant convicted of conspiracy to commit first-degree murder to life without parole. A first-degree murder conviction requires such a sentence, and the conspiracy statute requires a sentence "equal to that" of the target offense. Thus, a decision to use the statutory distinctions of murder requires a nonparolable life sentence. Certainly the Legislature could not have intended, in the conspiracy statute, to create such an inconsistent punishment: Defendant, who only planned the conspiracy, gets life without parole; the coconspirators who did the act get life with the possibility of parole, or an indeterminate sentence (pursuant to their plea of assault with intent to murder).

Lastly, the conclusion that "conspiracy to commit murder" refers to common-law murder furthers the additional legislative policy of judicial sentencing discretion.[1]

ARCHER, J., concurred with CAVANAGH, J.

LEVIN, J. (*separate opinion*). Stephen Rafel Fer-

---

[1] I am in agreement with the Court of Appeals statement in this regard:

The Legislature wanted to make it clear that in sentencing for conspiracy, the sentencing judge had discretion to impose just as severe a maximum sentence as for the substantive offense. The Legislature was not thinking of a *mandatory* sentence, which is a limitation upon sentencing discretion.

Thus, when the Legislature used the words "a penalty equal to that which could be imposed," we believe that the legislative intention was to authorize and empower the sentencing judge as to the maximum penalty that he could impose. Applied in this case, we believe that the sentencing judge "could" impose a life sentence if, in his discretion, he believed it advisable. We do not, however, conclude that he was required to impose a life sentence in a situation such as this where no murder, in fact, occurred. [143 Mich App 388, 405; 372 NW2d 567 (1985).]

nandez[1] was convicted of conspiracy to commit first-degree murder and assault with intent to commit murder.[2] He was sentenced to life imprisonment on the conspiracy conviction and ten to twenty years on the assault conviction.

The trial judge refused to instruct on conspiracy to commit second-degree murder stating that second-degree murder is unplanned murder and that the Court of Appeals had held that conspiracy to commit second-degree murder was not a necessarily included offense of conspiracy to commit first-degree murder.[3] In contrast with the Court of

---

[1] MCL 750.157a; MSA 28.354(1), MCL 750.316; MSA 28.548.

[2] MCL 750.83; MSA 28.278.

[3] The judge referred to *People v Hamp*, 110 Mich App 92, 102-103; 312 NW2d 175 (1981), *People v Jackson*, 114 Mich App 649, 666-667; 319 NW2d 613 (1982), and *People v Perry*, 115 Mich App 533; 321 NW2d 719 (1982).

In *Hamp*, the defendant was convicted of conspiracy to commit first-degree murder and first-degree murder. The judge presumably instructed on second-degree murder pursuant to *People v Jenkins*, 395 Mich 440, 442; 236 NW2d 503 (1975), but did not instruct sua sponte on conspiracy to commit second-degree murder. In affirming, the Court of Appeals said:

> The gist of the offense lies in the unlawful agreement between two or more persons to do the unlawful act. [*People v*] *Atley* [392 Mich 298; 220 NW2d 465 (1974)], [*People v*] *Wright* [*(On Remand)*, 99 Mich App 801; 298 NW2d 857 (1980)]. All the requisite elements of the crime of conspiracy are met when the parties enter into the mutual agreement, and no overt acts necessarily must be established. *People v Scotts*, 80 Mich App 1, 14-15; 263 NW2d 272 (1977). Thus, conspiracy is a crime separate and distinct from the substantive offense. *People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975), *People v Carter*, 94 Mich App 501, 504-505; 290 NW2d 46 (1979). The crime of conspiracy punishes the "planning" of the substantive offense; the substantive offense punishes the actual commission of the crime. *People v Berry*, 84 Mich App 604; 269 NW2d 694 (1978).
>
> Since prior "planning" and "agreement" are necessary, mandatory requisite elements of the crime of conspiracy, we find it analytically consistent to "plan" to commit first-degree murder but logically inconsistent to "plan" to commit second-degree murder. To prove a conspiracy to commit murder, it must be established that each of the conspirators have the intent required for murder and, to establish that intent, there must be

Appeals decisions relied on by the judge,[4] in the instant case the intended victim of the conspiracy, although assaulted, was not killed.

The Court of Appeals in the instant case, noting that panels of the Court were divided on the

> foreknowledge of that intent. Foreknowledge and plan are compatible with the substantive crime of first-degree murder as both the crime of conspiracy and the crime of first-degree murder share elements of deliberation and premeditation. Prior planning denotes premeditation and deliberation. The elements of conspiracy, conversely, are incompatible and inconsistent with second-degree murder. One does not "plan" to commit an "unplanned" substantive crime. It is not "absence" of the elements but the "inconsistency" of the elements which lead us to conclude that one conspires to commit first-degree murder but not second-degree murder. Therefore, because of this inconsistency between the requisite elements of conspiracy and second-degree murder, we cannot conclude as a matter of law that conspiracy to commit first-degree murder includes the lesser offense of conspiracy to commit second-degree murder. Therefore, we find no error in the trial court's failure to instruct, *sua sponte,* as to the latter offense.

In *Jackson*, the defendant was convicted of conspiracy to commit second-degree murder and second-degree murder. The jury was apparently instructed without objection that the defendant could be convicted of conspiracy to commit second-degree murder. The Court, relying on the reasoning of *Hamp*, agreed with the defendant that he could not be convicted of conspiracy to commit second-degree murder:

> Although *Hamp* did not specifically hold that the crime of conspiracy to commit second-degree murder is nonexistent, the rationale of that opinion leads us to such a conclusion. As did the panel in *Hamp*, we find the elements of conspiracy to be incompatible and inconsistent with the elements of second-degree murder. One does not plan to commit an unplanned substantive offense.

One of the members of the Court of Appeals panel dissented from the vacation of defendant's conviction of conspiracy to commit second-degree murder stating, among other things, that the defendant had not objected to the instruction.

In *Perry*, the defendant was also convicted of second-degree murder and conspiracy to commit second-degree murder. On the authority of *Jackson*, the defendant's conviction of conspiracy to commit second-degree murder was vacated. The judge who dissented in *Jackson* was a member of the Court of Appeals panel in *Perry* and dissented on the same basis.

[4] See n 3.

question,[5] agreed with the reasoning of the decisions relied on by the judge in declining to instruct on conspiracy to commit second-degree murder.[6] The Court agreed, however, with Fernandez that a life sentence on the conspiracy conviction was not mandatory and, rejecting his other assignments of error, otherwise affirmed the convictions and remanded for resentencing.

I would hold that the judge erred in refusing to instruct on conspiracy to commit the offense of murder, graded under the Penal Code as second-degree murder, and would affirm the conspiracy conviction as conspiracy to commit murder and remand for resentencing.

I

The Penal Code provides that "[a]ny person who conspires together with 1 or more persons to commit an *offense* prohibited by law" (emphasis supplied) is guilty of the crime of conspiracy and "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ."[7]

The trial judge, the Court of Appeals, and the opinion of the Court hold that the "offense" prohibited by law in all conspiracies to commit murder is first-degree murder and can never be second-degree murder. I would hold that the "offense"

---

[5] See *People v Hence,* 110 Mich App 154, 170; 312 NW2d 191 (1981); *People v Owens,* 131 Mich App 76, 83; 345 NW2d 904 (1983).

[6] The Court of Appeals said:

We conclude that if a crime cannot logically exist then it cannot be necessarily included in another offense. [*People v Fernandez,* 143 Mich App 388, 396; 372 NW2d 567 (1985).]

[7] MCL 750.157a; MSA 28.354(1).

prohibited by law is murder without grading or
specification of a degree.

### A

Assuming that the offense of conspiracy to mur-
der is graded, there might be a conspiracy to
commit second-degree murder. This Court has held
that "in order to convict a defendant of murder, as
that term is defined by Michigan case law, it must
be shown that he acted with intent to kill *or* to
inflict great bodily harm *or* with a wanton and
wilful disregard of the likelihood that the natural
tendency of his behavior is to cause death or great
bodily harm."[8] (Emphasis supplied.) A conspiracy
to inflict great bodily harm or to act with a wan-
ton and wilful disregard of the likelihood that the
natural tendency of the behavior is to cause death
or great bodily harm would not—assuming, again,
that the offense of conspiracy to murder is graded
—justify a charge of conspiracy to commit first-
degree murder, and would, at most, depending on
the circumstances, justify a charge of conspiracy to
commit second-degree murder.

### B

Be that as it may, conspiracy to murder is the
"*offense* prohibited by law" (emphasis supplied)
under the conspiracy provision of the Penal Code
without grading or specification of a degree. In
*People v Johnson,* 427 Mich 98, 107-108; 398
NW2d 219 (1986), the lead opinion declared that
"murder is a single *offense*" (emphasis supplied),
and that the degree of the offense need not be
stated in the information or established at the
preliminary examination:

[8] *People v Aaron,* 409 Mich 672, 733; 299 NW2d 304 (1980).

Neither statute nor case law requires specification of the degree of murder at a preliminary examination where open murder is charged in the information. Indeed, at common law, there was no specification of degree of murder because all unexcused and unjustified homicides committed with malice were murder punished by death. Perkins, Criminal Law (2d ed), p 88. *Specification of degree is a legislative innovation used to distinguish between those murders meriting the harshest punishment and those murders meriting a less severe punishment.* Id., pp 88-89. MCL 767.44; MSA 28.984 simply validates simplified short-form informations for the charging of various crimes. *The "open murder" statute, MCL 767.71; MSA 28.1011, recognizes that murder is a single offense and that, at the informational stage, no specification of degree is required.* The information occurs after and depends upon the bindover for the possible charges. MCL 767.45; MSA 28.985 requires that an information contain merely "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged . . . ." MCL 767.71; MSA 28.1011 provides that an indictment or information charging murder need only set forth the "charge that the defendant did murder the deceased . . . ." [Emphasis supplied.]

This recognition that murder is a single offense would seem to require recognition that the *"offense* prohibited by law" (emphasis supplied) under the conspiracy provision of the Penal Code is murder without grading or specification of a degree of that offense.

II

Section 316 of the Penal Code provides that all "[m]*urder* which is perpetrated by means of poison, lying in wait, or any other wilful, deliberate, and premeditated killing" (emphasis supplied) and

murder committed in the perpetration or attempt to perpetrate certain felonies shall be murder of the first degree, and a mandatory life sentence shall be imposed.[9] Section 317 provides that "[a]ll *other kinds of murder* shall be murder of the second degree" (emphasis supplied) and, in the discretion of the court, shall be punished by any term of years or imprisonment for life.[10] Section 318 provides that, unless a jury is waived, "[t]he jury before whom any person indicted for *murder* shall be tried shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree . . . ."[11] (Emphasis supplied.)

In grading murder into murder of the first and second degree, in providing for a mandatory life sentence for first-degree murder, in confiding to the judge discretion to sentence for any term of years up to life when the defendant is convicted of second-degree murder, in providing that a jury decides whether the degree of the offense is first or second, the Legislature contemplated that a jury—not a judge—would decide whether the mandatory life sentence must be, or a less severe sentence might be, imposed on a person found by the jury to have committed the offense of murder.

Section 318 of the Penal Code requires the jury to assess the actor's state of mind at the time of a killing; the concept of premeditation and deliberation focuses under § 318 on the state of mind of the actor at the time of a killing. Section 318 does not provide for jury assessment of the actor's state of mind at the time an agreement or conspiracy to murder may have been entered into.[12] Since only

---

[9] MCL 750.316; MSA 28.548.

[10] MCL 750.317; MSA 28.549.

[11] MCL 750.318; MSA 28.550.

[12] The convoluted jury instructions in the instant case demonstrate

the jury can, consistent with § 318, grade the offense as first degree and thereby require a mandatory life sentence, and § 318 provides for jury assessment of the actor's state of mind only if there is a killing, absent a killing there can be no jury determination whether there was premeditation and deliberation and no finding of first degree.

To be sure, if the agreement is performed, the conspirators, because they presumably acted with ample premeditation and deliberation, might be convicted of first-degree murder, but it does not follow that the murder that they conspired to commit must or even might, consistent with § 318, be characterized, *without jury assessment* as a matter of law, as first-degree murder.

### III

The grading of murder into first- and second-degree murder seeks to distinguish through the concept of premeditation and deliberation between hot-blooded and cold-blooded murder. The Legislature sought thereby to distinguish between the most heinous and less heinous killings. That purpose of the grading system cannot be implemented when there is no killing.

While the offense of conspiracy is committed when the agreement is entered into, and, if conspired murder were to be committed, it would likely be a premeditated and deliberated murder, the essence of the concept of premeditation and deliberation is that on reflection in a *cool* state of mind the actor might—even at the last moment—refrain from killing the other person. Until a fatal blow is struck it is not too late, and unless a fatal

the difficulty encountered in asking a jury to assess pursuant to § 318 whether the conspiracy is in respect to a wilful, deliberate, and premeditated killing where there has not been an actual killing.

blow is struck there has not been a "wilful" killing with "premeditation and deliberation." Unless there is a killing, there is no way of knowing whether the actor would, even after blows have been struck, on further last-minute or even last-second deliberation, have changed his mind, refrained from striking a fatal blow, and not killed at all and, thus, no way of making the jury assessment contemplated by § 318.[13] While a last-minute change of mind might not relieve the actor of criminal responsibility for conspiring to murder, he is not subject to criminal responsibility for conspiracy to commit first-degree murder because the jury cannot make the assessment contemplated by § 318.

The grading system and the threat of a mandatory life sentence also seek to deter killing where there is an opportunity to premeditate and deliberate in a reflective and cool state of mind. Construing the Penal Code as requiring imposition of a mandatory life sentence whenever a conspiracy to kill is formed is a disincentive to abandoning the plan to kill and thus is inconsistent with that purpose of the grading system.[14]

IV

Under § 318, the jury alone determines whether

---

[13] One might say that Fernandez did not change his mind, but at most the two other actors who pled guilty of assault with intent to murder and who testified against Fernandez changed their minds. It is nevertheless, under § 318, for the jury and not for a judge to decide, again assuming there are degrees of the offense of conspiracy to murder, whether the degree of the offense was first or second.

[14] One is reminded of the 1934 amendment (48 Stat 781, 782) of the 1932 Lindbergh Law (47 Stat 326), providing that if the person was "liberated unharmed" the death penalty could not be imposed. See *United States v Jackson*, 390 US 570, 586 ff.; 88 S Ct 1209; 20 L Ed 2d 138 (1968); 1 ALI Model Penal Code and Commentaries, pt II, § 212.1, pp 209-210, 232-237; ALI Model Penal Code (Tentative Draft No 11), pp 19-20; Note, *A rationale of the law of kidnapping*, 53 Colum L R 540-549 (1953).

the degree of the offense is first or second. If there
is an actual killing, the judge could not, however
clear or even undisputed the evidence, deprive the
accused of jury assessment and determination of
the degree of the offense of murder. That central
concept of § 316 (defining first-degree murder),
§ 317 (defining second-degree murder), and § 318
(defining the role of judge and jury) should guide
decision in the instant case. The conspiracy and
murder provisions of the Penal Code should be
construed to preserve the allocation of roles pro-
vided for in § 318 and to preclude a judge from
taking from the jury the assessment of the degree
of the offense of murder.

Construing the conspiracy and murder sections
of the Penal Code in the manner suggested would
eliminate the risk that a person charged with
conspiracy to murder where there was no killing
will be subjected to a mandatory life sentence with
the possibility, depending on what occurs on re-
mand, that he may never be paroled, although
persons who actually kill are not infrequently
sentenced to life terms or a lesser number of years
of imprisonment and are paroled after ten years or
less.

The lodestar of statutory construction is legisla-
tive intent. It is not consonant with the statutory
scheme to construe the provisions of the Penal
Code, permitting imposition of a mandatory life
sentence only upon jury determination that the
degree of the offense is first and not second, as
eliminating as a matter of law, without jury as-
sessment of the degree of the offense, the possibil-
ity of a sentence of less than life imprisonment
when a conspiracy to murder does not result in a
killing.

I would modify the judgment of conviction to
show the conspiracy conviction as conspiracy to
murder and remand for resentencing.