COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICO SALDANA,

Defendant-Appellant.

UNPUBLISHED
June 16, 2016

No. 320796
Saginaw Circuit Court
LC No. 12-037966-FC

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant, Rico Saldana, appeals as of right from his convictions following a jury trial of first-degree premeditated murder, MCL 750.316(1)(a); conspiracy to commit first-degree premeditated murder, MCL 750.316(1)(a) and MCL 750.157a; nine counts of possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b; five counts of assault with intent to commit murder, MCL 750.83; and one count each of carrying a concealed weapon (CCW), MCL 750.227; carrying a dangerous weapon with unlawful intent, MCL 750.226; discharging a firearm from a vehicle, MCL 750.234a; and felon in possession of a firearm, MCL 750.224f. We affirm defendant's convictions and sentences, except for the sentence imposed for conspiracy to commit first-degree premeditated murder, which must be corrected to indicate the possibility of parole.

I. PERTINENT FACTS

This case arises out of a shooting that resulted in the death of six-year-old Layla Jones. She was shot as she prepared to get into the back seat of her grandmother's car after spending the evening at her aunt's home on Essling Street in Saginaw. She later died at a local hospital emergency room. The prosecution's chief witness was one of the men involved in the shooting, Julian Ruiz. Julian testified at trial that he, defendant, Michael Lawrence, and Levonne Jomarrio Greer[1] had been consuming alcohol and smoking marijuana at defendant's house on Harold

---

[1] Defendant and Lawrence were tried together before one jury, which convicted both men. Lawrence has appealed separately; that appeal is currently pending before this Court in Docket No. 321433. Greer, the third participant in the shooting, was tried and convicted separately.

Street in Saginaw. At some point, they learned that a mutual acquaintance, Bobby Bailey, was killed earlier that day. Julian said they were upset about Bailey's death, but that no one expressed any particular opinion about it. Later that day, defendant asked Julian to see if he could borrow a Buick Skylark that belonged to Julian's sister, Marlena Ruiz. Julian left, picked up the Skylark, and returned to defendant's house. A short while later, defendant, Lawrence, and Greer returned in a Dodge Avenger; defendant was driving the Avenger. Defendant told Julian to follow them, and they drove to a house that belonged to one of defendant's relatives. Everyone then got into the Skylark, with defendant driving. Although Julian had previously been driving the Skylark, he got into the backseat because defendant stated that he wanted to drive the car. Lawrence sat in the passenger seat, and Greer and Julian sat in the back. Julian saw that both Lawrence and Greer were holding guns.

After turning onto Essling Street, someone in the car said, "There goes somebody." Defendant slowed the car to a roll while Lawrence reached across defendant and fired his gun out of the front driver's-side window toward a group of people standing in front of Layla's aunt's home, while Greer fired out of the back driver's-side window. When the shooting stopped, defendant hastily drove the Skylark away from the scene of the shooting. Layla was fatally injured in the shooting. Her father, Shawrone Jones, sustained gunshot wounds to the stomach and leg. Julian estimated that Lawrence and Greer fired approximately 10 to 12 shots. At some point, either before or after the occupants of the vehicle stopped shooting, the vehicle sustained damage from three gunshots.

After leaving the scene of the shooting, defendant drove the Skylark back to the house where they had left the Avenger. Defendant and Greer got back into the Avenger, and Julian and Lawrence drove the Skylark back to defendant's house. According to Julian, Lawrence gave his handgun to defendant after the shooting. Julian collected three shell casings from inside the Skylark and tossed them in the sewer in front of defendant's house. Defendant instructed Julian to clean the Skylark. Julian later cleaned the car with baby wipes and, on the day after the shooting, used a spray can of disinfectant he obtained from defendant to clean the car. Julian hid the disinfectant and the towel he used to clean the car in the doghouse in his backyard. Two days after the shooting, police arrested defendant and Greer at a motel. At the time, defendant informed the officers that he and Greer were visiting an acquaintance and were at the motel to go swimming. The officers did not find swimming trunks or luggage in the motel room; in addition, the motel did not have a pool. The officers searched defendant's cellular telephone and discovered a police scanner application that monitored local radio frequencies was running on the phone.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant claims that the evidence was insufficient to prove that he acted with the intent to kill, or knew that Lawrence and Greer acted with the intent to kill, that the killing was premeditated and deliberate, or that he conspired with Lawrence and Greer to commit first-degree premeditated murder. Defendant argues that, at worst, the evidence shows that he acted

---

This Court affirmed Greer's convictions. *People v Levonne Jomarrio Greer*, unpublished opinion per curiam of the Court of Appeals, issued January 22, 2015 (Docket No. 318286).

as an accessory after-the-fact. We review de novo his challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id.* at 196.

Although defendant raises the issue of the sufficiency of the evidence to support the jury's guilty verdict for assault to commit first-degree murder and "various firearms offenses," the gravamen of defendant's claim is that the record does not support a finding of a specific intent to kill, premeditation and deliberation, or conspiracy. Defendant does not dispute his convictions of CCW, carrying a dangerous weapon with unlawful intent, discharging a firearm from a vehicle, felon in possession of a firearm, or felony-firearm. Therefore, and commensurate with defendant's arguments, we consider whether there was sufficient evidence to support defendant's convictions for first-degree premeditated murder, conspiracy to commit murder, and assault with intent to commit murder.

With regard to first-degree murder and assault with intent to commit murder, defendant was charged under an aiding and abetting theory. MCL 767.39 provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." "Aiding and abetting" describes "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). The elements of aiding and abetting are as follows:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), quoting *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (alteration in original).]

" An aider and abetter's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *Id.* at 474. Similarly, an aider and abetter's intent may be inferred from circumstantial evidence. *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999).

## A. FIRST-DEGREE MURDER

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Bennett*, 290 Mich App at 472. Because the intent to kill can be difficult to prove, "minimal circumstantial evidence is sufficient a defendant's intent to kill." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). A defendant's intent to kill may be inferred from "any facts in evidence," *id.*, including the use of a deadly weapon, *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

To sustain a conviction of first-degree murder under an aiding and abetting theory, the prosecution had to present evidence, beyond a reasonable doubt, that: (1) defendant or someone else committed first-degree murder; (2) defendant performed acts or gave encouragement that assisted the commission of first-degree murder; and (3) defendant intended the commission of first-degree murder or knew that the principal intended to commit first-degree murder at the time he rendered aid. See *id.* Here, there was evidence that Greer and/or Lawrence acted as principals in the shooting. Defendant argues that there was insufficient evidence for a rational jury to find that he encouraged a principal to commit the offense, or that he intended the commission of the offense or knew that Lawrence or Greer intended to commit the offense of first-degree murder.

Contrary to defendant's assertions, there was ample evidence that he performed acts or gave encouragement that assisted in the commission of the offense of first-degree murder. According to Julian's testimony, defendant insisted that he drive the group in the Skylark immediately before the shooting. In addition, after defendant or one of his cohorts said "There goes somebody" defendant slowed the car in front of the house where they opened fire. Such an act could be viewed as an act of assistance, as slowing the car would make it easier for the occupants of the car to aim and shoot. When the shooting was over, defendant sped away from the scene. When viewed in a light most favorable to the prosecution, a rational juror could find that defendant rendered assistance to the principals.

Further, defendant's intent to kill, or knowledge of Greer and Lawrence's intent to kill, may reasonably be inferred from the circumstances of the shooting. See *Unger*, 278 Mich App at 223. The evidence shows that Lawrence and Greer visibly held guns in their laps as defendant drove to Essling Street. Once they turned onto Essling Street and saw people standing in front of the home, defendant slowed the Skylark while Lawrence reached across him and fired out of the window at the crowd and Greer pointed his gun out the back driver's-side window and started shooting. Lawrence and Greer's intent to kill may be inferred from their use of guns to shoot at the people on Essling Street. *DeLisle*, 202 Mich App at 672. Lawrence and Greer openly possessed deadly weapons in the car, and defendant supported them in their purpose by slowing the borrowed Skylark at the bottom of the driveway in front of the home where the shooting occurred, thereby giving Greer and Lawrence the time to fire 10 to 12 rounds toward the people in front of the house, see *Moore*, 470 Mich at 63. The fact that the car was travelling at a slower speed can be understood as providing the shooters an increased opportunity to strike what they were shooting at. Although no evidence was presented to establish that defendant, Lawrence, or Greer intended to kill anyone in particular, under the doctrine of transferred intent, it is only significant that the intent to kill exist, not that the intent was directed at any particular person. *People v Abraham*, 234 Mich App 640, 658; 599 NW2d 736 (1999).

There was also sufficient evidence of premeditation and deliberation. "Premeditation and deliberation, for purposes of a first-degree murder conviction, require sufficient time to allow the defendant to take a second look." *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007) (citation and quotation marks omitted). The time span necessary for a "second look" need not be long. *Unger*, 278 Mich App at 229. "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *Id.* In the instant case, the premeditated and deliberate nature of the killing is evident from the acquisition

and positioning of the guns in preparation for the shooting, as well as in the way defendant arranged transportation to and from the shooting. See *id.* Notably, defendant asked Julian to borrow Marlena's Skylark, even though the group had other vehicles at their disposal. Further, rather than drive to Essling Street directly from his house, defendant used a different house—one that belonged to one of his relatives—as the point of departure and return. Lawrence and Greer were armed and holding their guns in their laps as they travelled. Upon seeing "somebody," defendant slowly rolled the car past the home where the shooting occurred, giving the shooters more time and a better chance to hit their targets. After the shooting, the group returned to the Avenger, and Lawrence gave his weapon to defendant. This evidence of preparation and organized conduct before and after the intentional killing is sufficient to allow a reasonable jury to infer that the killing, which defendant helped facilitate, was premeditated and deliberate. See *id.*

## B. ASSAULT WITH INTENT TO COMMIT MURDER

Defendant also argues that there was insufficient evidence to support his convictions for assault with intent to commit murder under an aiding and abetting theory. "The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Ericksen*, 288 Mich App at 196 (citation and quotation marks omitted).

For many of the reasons noted above, there was sufficient evidence for a rational jury to conclude that Lawrence or Greer committed the offense of assault with intent to commit murder when they opened fire upon the group gathered at the house on Essling Street, and that defendant gave encouragement and intent the commission of the crime. As noted, defendant drove the Skylark to the home; during the drive Lawrence and Greer sat with their weapons displayed visibly. Upon someone in the vehicle saying, "There goes somebody," defendant slowed the vehicle, and his cohorts opened fire. Defendant sped away when his cohorts stopped shooting. This evidence was sufficient for a rational jury to find that defendant aided and abetted the commission of assault with intent to commit murder. See *Bennett*, 290 Mich App at 472; *Ericksen*, 288 Mich App at 196.

## C. CONSPIRACY TO COMMIT FIRST-DEGREE MURDER

Defendant also argues that the prosecution did not prove the existence of a conspiracy. He argues that while there was evidence of a shooting, there was no evidence of an explicit agreement to shoot. Defendant submits that there was no testimony that he, Lawrence, or Greer discussed avenging Bailey's death, or that he instructed Lawrence and Greer to shoot, or that he handled a weapon, other than the one Lawrence gave him after the shooting.

MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." "A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). The individuals must specifically intend to combine to commit the offense. *Id.* A conspiracy can be established through circumstantial evidence, including the acts and conduct of the parties. *Id.*

In the instant case, the acts of the parties established an implied agreement to commit first-degree murder. Although Julian testified that no one talked about avenging Bailey's death or otherwise killing anyone, all four participants in the shooting knew Bailey and had learned earlier that day that someone had killed him. And, as noted above, defendant orchestrated a transportation scheme that would distance himself and his cohorts from the killing. While en route to the scene of the shooting, Lawrence and Greer positioned weapons in their laps. They opened fire shortly after spotting a group of people. Defendant slowed the Skylark as they fired several shots. Once Lawrence and Greer had fired their shots, defendant accelerated down Essling Street and drove back to the house where they left the Avenger, where defendant and Greer changed cars again and the group split up. Although the record contains no evidence of an explicit agreement, the coordinated actions of defendant, Lawrence, and Greer warrant a fair inference that defendant and his cohorts conspired together to accomplish a drive-by shooting that they intended to result in death. As noted above, the steps these individuals took before and after the shooting supports that their coordinated actions were premeditated. See *Jackson*, 292 Mich App at 588, 590. Defendant's argument is meritless.

## D. CONCLUSION AS TO DEFENDANT'S SUFFICIENCY ARGUMENTS

In sum, viewed in a light most favorable to the prosecution, we find that the prosecution presented sufficient evidence to allow a rational trier of fact to determine that the essential elements of first-degree murder, conspiracy to commit first-degree murder, and assault with intent to commit murder are met. See *Ericksen*, 288 Mich App at 196. Although defendant does not challenge the sufficiency of the evidence with regard to the remainder of his convictions— his convictions involving firearm offenses—we find that, based on the above discussion, there was sufficient evidence to support these convictions as well.

## III. PRIOR TESTIMONY OF MARLENA RUIZ

Defendant next argues that the trial court erred in denying his motion to admit former testimony offered by Marlena Ruiz during Greer's trial. Before defendant's trial, the parties attempted to, but could not locate Marlena. "This Court reviews a trial court's determination of evidentiary issues for an abuse of discretion." *People v Farquharson*, 274 Mich App 268, 271; 731 NW2d 797 (2007). To the extent the trial court's evidentiary ruling involves a preliminary question of law, our review is de novo. *Id.* A trial court has not abused its discretion if its decision results in an outcome within the range of reasoned and principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

All relevant evidence is admissible unless it is otherwise restricted by law. MRE 402. Out-of-court statements offered for their truth are hearsay, MRE 801(c), and are inadmissible unless the rules of evidence provide otherwise, MRE 802. Defendant acknowledges that Marlena's prior testimony in Greer's trial are hearsay. However, he argues that the hearsay exception in MRE 804(b)(1) applies to her statements. MRE 804(b)(1) allows a party to admit into evidence the former testimony of a declarant who is unavailable as a witness. The rule provides that "[t]estimony given as a witness at another hearing of the same or a different

proceeding"[2] is not excluded by the hearsay rule "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). In a criminal trial, a declarant is unavailable as a witness if he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and . . . due diligence is shown." MRE 804(a)(5).

Neither side disputes that Marlena was unavailable for trial, or that the prosecution exercised due diligence in trying to locate her. Defendant filed a pretrial motion seeking the prosecution's assistance in locating Marlena, but despite the efforts of the prosecutor's investigator, she could not be located. Consequently, defendant requested that her testimony from Greer's trial be admitted as evidence in this trial. When seeking to admit her testimony at his own trial, defendant represented that her testimony could contradict a portion of Julian's testimony. In particular, defendant noted that Julian testified that he called Marlena when he asked if he could borrow her car, the Skylark, and that Marlena spoke to defendant. According to defense counsel's representations at defendant's trial, Marlena denied having spoken with defendant when she testified in Greer's trial.[3] We note that defendant has not provided this Court with a copy of Marlena's testimony in Greer's trial, nor does a copy of her testimony appear in the trial court record.

The trial court denied defendant's request to admit Marlena's prior testimony, reasoning as follows:

> because none of you had a chance to question her on the areas that you mentioned are relevant in this particular situation. I'm not sure, while it may be tangentially relevant, that it's important to this case at all. It is an unusual request to have testimony read from another case where neither lawyer had a chance to cross-examine the witness, highly unusual, and I'm denying it at this point.

Defendant argues on appeal that the trial court erred when it denied his motion to admit Marlena's former testimony without considering any of the factors set forth in *Farquharson*. In *Farquharson*, 274 Mich App at 278, we adopted the following non-exhaustive list of factors for trial courts to consider when determining whether the opponent of proposed former testimony had an opportunity and similar motive to develop the disputed testimony:

---

[2] Neither side disputes that Greer's trial qualifies as a "different proceeding" for purposes of MRE 804.

[3] In his brief to this Court, defendant misrepresents Julian's testimony, claiming that his testimony was that defendant asked him to borrow Marlena's car *after* defendant had talked to Marlena. Julian's testimony was that defendant asked him to borrow his sister's car, he spoke with her on a cell phone to arrange to borrow the car, and then defendant talked to her. Julian did not talk to Marlena again because defendant did not give the telephone back to him.

(1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings-both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [Quotation marks omitted.]

The trial court did not explicitly invoke the *Farquharson* factors. However, the court's statement that "none of you had a chance to question her on the areas that you mentioned are relevant in this particular situation" implies the determination that at least one of the *Farquharson* factors were not met. Specifically, that the prosecutor's interest in Marlena's testimony at the prior proceeding was not "of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *Id*. We agree that this factor was not met. In Greer's trial, Marlena's testimony about whom she spoke to was irrelevant because the defendant was Greer, and she did not speak to Greer, and the prosecution had no reason to establish whether Marlena spoke with defendant in the instant case. What the prosecution needed to prove in that case was that Greer was one of the individuals in the Skylark who fired shots. Whether Marlena spoke with defendant in the instant case was of no consequence in Greer's trial.[4] In other words, the prosecutor had no motivation to establish whether Marlena spoke with defendant in Greer's trial. Although the prosecutor had the same interest in proving the commission of the drive-by shooting in both Greer's and defendant's trials, the prosecutor needed to prove the role of two distinct players in those distinct trials. A relatively benign remark about to whom Marlena spoke was of no consequence with regard to Greer's role. Accordingly, the trial court did not abuse its discretion in excluding Marlena's prior testimony, as the prosecutor did not have, at Greer's trial, an interest of substantially similar intensity to prove or disprove whether Marlena spoke with defendant in the instant case. See *Farquharson*, 274 Mich App at 278. Moreover, because the testimony was inadmissible, there is no merit to defendant's accompanying assertion that the trial court's exclusion of this evidence denied him the right to present a defense. See *Unger*, 278 Mich App at 250 (recognizing that an accused's right to present a defense must yield to evidentiary rules, so long as those rules are not arbitrary or disproportionate to their intended purpose).

## IV. SENTENCING

Defendant next argues, and the prosecutor agrees, that the trial court erred by sentencing him to life without the possibility of parole on the charge of conspiracy to commit first-degree murder. The prosecution concedes error, and we agree. The trial court must sentence a person convicted of first-degree murder under MCL 750.316 to life imprisonment. *People v Fernandez*, 427 Mich 321, 329; 398 NW2d 311 (1986). However, the parties correctly state that a person sentenced to a term of imprisonment for conspiracy to commit first-degree murder must be

---

[4] For that matter, it is of little consequence in the instant case as well. At most, such testimony would impeach Julian's testimony on a minor point that was tangentially relevant in this case. Therefore, even assuming error, defendant would not be entitled to relief.

eligible for parole, and that the trial court erred in sentencing defendant to life without the possibility of parole on the conspiracy conviction.[5] *People v Jahner*, 433 Mich 490, 504; 446 NW2d 151 (1989). We remand to the trial court for administrative correction of the error. Defendant is not entitled to a resentencing hearing because correcting the judgment of sentence in the instant case is an administrative task. See *People v Herndon*, 246 Mich App 371, 393; 633 NW2d 376 (2001).

## V. STANDARD 4 BRIEF

In his Standard 4 brief, defendant argues that he was deprived of effective assistance of counsel when his attorney failed to cross-examine the lead police investigator about statements contained in the affidavit used to obtain a warrant to search Julian's house. Defendant did not make a motion in the trial court for a new trial or an evidentiary hearing. However, he did file a motion with this Court to remand the matter to the trial court for an evidentiary hearing to address his claim of ineffective assistance. We denied the motion. *People v Saldana*, unpublished order of the Court of Appeals, entered March 11, 2015 (Docket No. 320796). Our review is limited to the record on appeal. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). To prevail, defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *Id.* Defense counsel is given wide discretion in matters of trial strategy, *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007), and "should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]' " *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "[C]ounsel's ineffective assistance must be found to have been prejudicial in order to reverse an otherwise valid conviction." *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994).

Defendant contends he would have benefitted had the jury heard certain information found in the affidavit used to obtain a search warrant of Julian's house. Specifically, defendant insists that he would have benefitted had the jury known the following: (1) Marlena owned the vehicle used in the shooting; (2) an anonymous tipster reported that Julian fired shots out of the car's window; (3) Marlena's car had been under surveillance before the police suspected defendant's involvement; (4) the Skylark had been involved in a traffic accident the day after the shooting; (5) Marlena had "spontaneously asked" the police officers who were taking pictures at

---

[5] We note, however, that this ruling does not affect defendant's nonparolable life sentence for first-degree premeditated murder.

the scene of the accident whether they were photographing her car because of the shooting the night before; and (6) Julian was initially considered a suspect in this case. Defendant argues that his trial counsel's failure to impeach Julian's testimony by cross-examining the police detective with regard to the above rendered counsel's performance objectively unreasonable. He also argues that his counsel's impeachment of Julian's credibility in other ways does not excuse his failure to impeach him through cross-examination of the detective.

Defendant fails to overcome the heavy presumption that his counsel provided effective assistance. *Seals*, 285 Mich App at 17. The jury did in fact hear testimony that the vehicle used in the shooting was Marlena's Skylark, that her car had been under surveillance, and that it had been involved in a traffic accident the day after the shooting. Further, the jury was aware that Julian was a suspect in the shooting, as it heard evidence that the police arrested Julian, searched his home, and interviewed him multiple times with regard to his role in the shooting. Defense counsel was not ineffective for failing to ask the detective about the anonymous tip that Julian was firing out the window of the Skylark because the tip is inadmissible hearsay. See MRE 801(c); MRE 802. Nor was defense counsel ineffective for failing to ask about Marlena's spontaneous question to the police at the scene of her auto accident because the statement was hearsay and defendant has failed to articulate an applicable exception to the hearsay rule. In addition, it is not clear how the statement is relevant given that no one disputes that Marlena's car was used in the shooting. In sum, defendant has not overcome the presumption that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 US at 690.

We remand the case to the trial court to correct the sentence imposed for conspiracy to commit first-degree premeditated murder. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering