*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN M. DIGIACOMO, JR.,

Defendant-Appellant.

UNPUBLISHED
February 12, 2025
1:35 PM

No. 365561
Tuscola Circuit Court
LC No. 21-015663-FC

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant, John Digiacomo, Jr., was convicted by a jury of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c; two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d; one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e; and three counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Digiacomo to 224 to 720 months' imprisonment for each CSC-I conviction, 10 to 15 years' imprisonment for the CSC-II conviction, 10 to 15 years' imprisonment for each CSC-III conviction, 16 to 24 months' imprisonment for the CSC-IV conviction, and consecutive terms of two years' imprisonment for the felony-firearm convictions. Because the court found Digiacomo's conduct uniquely egregious, the court imposed consecutive sentencing for both CSC-I convictions and the CSC-II conviction, for a combined total of more than 47 years. Digiacomo appeals by right. For the reasons we discuss below, we affirm Digiacomo's convictions and sentences, but remand for the ministerial task of correcting his sentencing guidelines score to reflect a score of 0 points for offense variable (OV) 2.

## I. BASIC FACTS

Digiacomo engaged in an extensive course of sexually abusing the 14-year-old victim, NR, in three different counties. At times the abuse involved a second perpetrator, Patrick Maule, who had been invited by Digiacomo to sexually abuse NR. The only crimes with which Digiacomo was charged in this case occurred at an abandoned house in Tuscola County. NR, however, was permitted to testify about the entire course of Digiacomo's abuse of her. Additionally, another 14-

year-old victim, DG, also testified regarding Digiacomo's participation in sexually abusing her. Maule, who was involved in the abuse of both NR and DG, pleaded guilty to sexually assaulting NR and testified against Digiacomo.

## II. OTHER-ACTS EVIDENCE

## A. STANDARD OF REVIEW

Digiacomo first argues that the trial court abused its discretion by permitting NR to testify regarding the abuse he inflicted upon her outside of Tuscola County. He contends that, although the evidence could properly be admitted and considered for its propensity value, it had the effect of portraying him as a "horrible person" and confused the jury, so the trial court should have excluded it under MRE 403. A trial court's decision to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

## B. ANALYSIS

MCL 768.27a(1) provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Both the charged offense and the other-acts evidence are "listed offenses," so the other-acts evidence is presumptively admissible.

However, "[r]elevant evidence that is admissible under MCL 768.27a may still be excluded under MRE 403." *People v Solloway*, 316 Mich App 174, 194; 891 NW2d 255 (2016) (quotation marks and citation omitted). When considering whether evidence admissible under MCL 768.27a should be excluded under MRE 403, "courts must weigh the propensity inference *in favor of* the evidence's probative value rather than its prejudicial effect." *Id*. (quotation marks and citation omitted). "That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012). Our Supreme Court provided an illustrative list of considerations for the trial court when weighing whether to exclude such evidence:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

The courts are responsible for ensuring that the probative value of the other-acts evidence is not outweighed by the danger of "confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," but that determination must "be made in the context of the entire trial" and the entirety of the evidence. *Id*. at 489 (quotation marks and citation omitted). "There is no bright-line rule for how many 'other

acts' may be admitted before the scale tips in favor of exclusion." *Id*. (quotation marks and citation omitted).

Digiacomo admits that the *Watkins* factors weigh in favor of admissibility under the circumstances of this case; however, he argues that admission of the other-acts evidence in its entirety violated the principle that "we try cases, rather than persons." *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017) (quotation marks, ellipsis, and citation omitted). Yet, there was no principled way to understand NR's conduct without understanding the whole picture of Digiacomo's conduct. As the prosecution points out, the only reason Digiacomo was not charged with *all* of his crimes was a quirk of political boundary lines. Moreover, from a superficial standpoint, NR seemingly went with Digiacomo voluntarily on multiple occasions. The jury might not have understood why NR kept going back to Digiacomo and why NR did not disclose Digiacomo's abuse for years without understanding the extent to which Digiacomo had demoralized, terrorized, manipulated, and hurt her. This case turned on credibility, and Digiacomo's theory of the case was that NR, DG, and Maule were lying about his involvement.

The probative value of the other-acts evidence, therefore, was significant and weighs in favor of its admissibility. The fact that the other-acts evidence strongly suggested that Digiacomo had a propensity for violent sexual assaults, threats, and manipulation was *the very point* of the evidence and its admissibility. Digiacomo argues that the other-acts evidence might have confused the jury, but, in fact, the *absence* of the other-acts evidence would have been confusing. The trial court did not abuse its discretion in admitting the other-acts evidence.

## III. UNANIMITY INSTRUCTION

Digiacomo argues that his lawyer provided ineffective assistance by failing to request an instruction that the jury must be unanimous regarding the theory under which it found Digiacomo guilty of CSC-I and CSC-II. We disagree.

Digiacomo's CSC-I and CSC-II charges were premised on multiple alternative theories: sexual penetration aided and abetted by another person and force or coercion is used, MCL 750.520b(1)(d)(*ii*) and MCL 750.520c(1)(d)(*ii*); use of a weapon, MCL 750.520b(1)(e) and MCL 750.520c(1)(e); or use of force or coercion causing personal injury, MCL 750.520b(1)(f) and MCL 750.520c(1)(f). As Digiacomo admits, "it is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). Given that a unanimity instruction was not warranted, Digiacomo's lawyer did not provide ineffective assistance by failing to request it. See *People v Blevins*, 314 Mich App 339, 352; 886 NW2d 456 (2016) (stating that a lawyer "is generally not ineffective for failing to make a novel argument.").

## IV. SENTENCING GUIDELINES

### A. STANDARD OF REVIEW

Digiacomo challenges the trial court's scoring of OV 1 (aggravated use of a weapon), OV 2 (lethal potential of weapon used), OV 7 (egregious conduct to increase victim's fear), OV 8 (victim asportation), OV 11 (sexual penetrations of victim), and OV 19 (interference with

administration of justice). When reviewing a sentence imposed by a trial court, the trial court's factual findings are reviewed for clear error, and any underlying questions of law are reviewed de novo. *People v Skinner*, 502 Mich 89, 137 n 27; 917 NW2d 292 (2018). "Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009). The trial court may consider all record evidence, including the testimony and victim-impact statements, and it may draw reasonable inferences from the evidence. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). The trial court may not consider conduct of which a defendant was acquitted, but the trial court may consider conduct with which a defendant was not charged. *People v Beck*, 504 Mich 605, 626-627; 939 NW2d 213 (2019). "A scoring error requires resentencing when it results in a miscalculation of the sentencing range." *People v Dupree*, 511 Mich 1, 14; 993 NW2d 185 (2023).

## B. ANALYSIS

Digiacomo first argues that the trial court erred by scoring OV 1 at five points. However, at sentencing, Digiacomo asked the court to score OV 1 at five points. By expressly approving the court's scoring of OV 1, Digiacomo has waived any challenge to it. See *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011).[1]

The sentencing offense was based upon an incident during which Digiacomo and Maule both penetrated NR simultaneously at an abandoned house. By this time, Digiacomo had repeatedly threatened NR that he would use his gun to harm her and her family if she did not comply with his demands. Further, he had been consistently and regularly providing her with pills and, at the time of the sentencing offense, she was addicted to the pills and was dependent upon them. During the sentencing offense, Digiacomo told Maule that he "owned" NR and that NR would do anything he ordered, which, by then, NR had come to believe was true. Digiacomo ordered NR to perform oral sex on Maule, and then Digiacomo penetrated her vagina with his penis while Maule penetrated her mouth with his penis. Maule testified that on the occasions that he and Digiacomo both penetrated NR together, Digiacomo would penetrate NR's vagina with his fingers while NR was complying with Digiacomo's order to perform oral sex on Maule. At other times, Digiacomo would penetrate NR's vagina with his penis and then he and Maule would switch positions so that Maule was penetrating her vagina with his penis and Digiacomo would penetrate her mouth. NR was unable to breathe, got lightheaded and dizzy, and was in pain and had difficulty moving afterwards.

Under OV 2, the trial court must score five points if, in relevant part, "The offender possessed or used a pistol . . . ." MCL 777.32(1)(d). Digiacomo usually drove NR in a truck, and

---

[1] Digiacomo's total OV score was 205 points. His nonwaived challenges only add up to 105 points. Thus, even if Digiacomo prevailed on all of his nonwaived challenges, his total guidelines score would remain at 100 points, which is still the highest OV level possible. MCL 777.62. His guidelines range would not change, so he would not be entitled to resentencing. We nevertheless consider his nonwaived challenges because his guidelines scores might affect decisions the Department of Corrections might make about him. See *People v Baskerville*, 333 Mich App 276, 302; 963 NW2d 620 (2020).

he kept a gun in the visor of the truck. NR testified that "he was always letting me know he had that gun." On the occasion of the sentencing offense, however, they took Maule's car, which was able to drive further into the abandoned property up a trail and into a "field" that was apparently wooded or surrounded by woods. Digiacomo and Maule assaulted NR in the "field." Although NR testified that Digiacomo always had his gun available in his truck, and she was reasonably afraid of the possibility that he had the gun available, Digiacomo did not take his truck on the relevant occasion and there was no evidence that Digiacomo always kept a gun on his person or had a gun with him at that time. Because there was no evidence that Digiacomo possessed or used a gun on that particular occasion, OV 2 was improperly scored at five points.

The trial court scored OV 7 at 50 points, which is required if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The conduct must have occurred during the sentencing offense and must go beyond the minimum conduct required to commit the offense. *People v Lowrey*, 342 Mich App 99, 121; 993 NW2d 62 (2022). " '[S]adism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). Humiliation may involve a physical component, but it may also be effectuated by emotional or psychological abuse. *People v Mattoon*, 271 Mich App 275, 277; 721 NW2d 269 (2006). A trial court should score OV 7 at 50 points if, in the course of committing criminal sexual penetration, the defendant verbally abuses the victim and subjects the victim "to extreme and humiliating conduct to make her suffer for his own gratification." *Lowrey*, 342 Mich App at 121.

Here, Digiacomo participated in cutting off NR's ability to breathe, which would certainly increase any victim's fear and anxiety. Digiacomo also subjected NR to degradation beyond what was necessary to commit the charged offense by showing her off and treating her as, in effect, trained chattel. Digiacomo's conduct went beyond what was necessary to effectuate CSC-I or CSC-II. His conduct was also egregious and constituted "extreme and humiliating conduct to make [NR] suffer for his own gratification." See *id*. The trial court did not clearly err by finding by a preponderance of the evidence that defendant treated NR with "sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety [she] suffered during the offense." MCL 777.37(1)(a).

The trial court scored OV 8 at 15 points, which is required if " '[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense.' " *People v Barrera*, 500 Mich 14, 15-16; 892 NW2d 789 (2017), quoting MCL 777.38(1)(a). "Asportation does not require force; asportation for the purpose of OV 8 may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), abrogated on other grounds by *Barrera*, 500 Mich at 16-17. "A place of greater danger includes an isolated location where criminal activities might avoid detection." *Id*. The asportation may include movement incidental to the commission of the crime. *Barrera*, 500 Mich at 17. Digiacomo argues that NR was not asported within the meaning of OV 8 because he moved her from the relative isolation of a car to an open field where others could have observed his conduct. However, moving her to the abandoned property itself was an act of asporting her to a more isolated and dangerous location. Furthermore, the fact that they were outdoors is irrelevant

because he moved her away from the road and farther away from any realistic possibility that anyone might have seen them. The trial court properly scored OV 8 at 15 points.

The trial court scored OV 11 at 50 points. Digiacomo argues that the trial court should have scored OV 11 at 25 points. Under OV 11, points should be scored for "sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). The sentencing court should score 50 points for two or more criminal sexual penetrations, and it should score 25 points for one criminal sexual penetration. MCL 777.41(1)(a) and (b). Points should not be scored "for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c). Penetrations "arising out of" the sentencing offense must have a causal connection to the sentencing offense that is more than incidental. *People v Johnson*, 474 Mich 97, 100-102; 712 NW2d 703 (2006). The evidence from NR and Maule, taken together, permitted the trial court to find by a preponderance of the evidence that defendant penetrated NR three times on that occasion: he penetrated her vagina with his fingers, he penetrated her vagina with his penis, and he penetrated her mouth with his penis. All of the penetrations were part of the same transaction and appear to have had a more-than-incidental causal connection to each other. Excluding any one of those penetrations leaves two others that were properly considered for purposes of scoring OV 11. The trial court properly scored OV 11 at 50 points.

The trial court scored OV 19 at 10 points, which is required if "there was a 'threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services.' " *People v Hershey*, 303 Mich App 330, 342; 844 NW2d 127 (2013), quoting MCL 777.49. OV 19 is an exception to the general rule that sentencing guidelines may only be scored by reference to the sentencing offense; it expressly permits consideration of conduct that occurs after the sentencing offense has been completed. *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010). Although OV 19 does not necessarily require a threat, a defendant's admonition to a CSC victim not to disclose the abuse constitutes interference or attempted interference with the administration of justice for purposes of OV 19. *People v Steele*, 283 Mich App 472, 492-493; 769 NW2d 256 (2009). "[T]hreatening or intimidating a victim or witness" and "telling a victim or witness not to disclose the defendant's conduct" both hamper, hinder, or obstruct the administration of justice. *Hershey*, 303 Mich App at 344. In light of the overwhelming evidence that Digiacomo repeatedly, extensively, and brutally threatened NR not to disclose his sexual assaults both before and after the sentencing offense, the trial court properly scored OV 19 at 10 points.

## V. CRUEL OR UNUSUAL PUNISHMENT

### A. STANDARD OF REVIEW

Finally, Digiacomo argues that his consecutive sentences constitute cruel or unusual punishment. "When a statute grants a trial court discretion to impose a consecutive sentence, that decision is reviewed for an abuse of discretion." *Baskerville*, 333 Mich App at 290. "Review of a discretionary decision requires that the trial court set forth the reasons underlying its decision." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). The trial court must individually justify each consecutive sentence it decides to impose. *Id*. at 665. In general, "[a]n appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same

offense," but "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *People v Boykin*, 510 Mich 181, 183-184; 987 NW2d 58 (2022).

## B. ANALYSIS

The Michigan Constitution forbids the imposition of "cruel or unusual punishment," which is a broader protection than the United States Constitution's prohibition against "cruel and unusual punishment." *People v Stovall*, 510 Mich 301, 312-314; 987 NW2d 85 (2022). Our Supreme Court has adopted a four-part test to determine whether a sentence is cruel or unusual. *Stovall*, 510 Mich at 314. "That test assesses (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation." *Id*. Even if one of the considerations weighs against the sentence imposed, other considerations favoring the sentence "may suffice to deflect a cruel and unusual punishment challenge." *People v Fernandez*, 427 Mich 321, 339; 398 NW2d 311 (1986).

Digiacomo challenges the proportionality of his cumulative sentences, none of which exceed their individual sentencing guidelines ranges. But "a proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of multiple sentences." *Norfleet*, 317 Mich App at 663. "[T]he combined term is not itself subject to a proportionality review . . . ." *Id*. at 664. And Digiacomo does not challenge the trial court's rationale for imposing consecutive sentences, which, in any event, does not appear unsound or inadequate. The trial court individually justified all of the consecutive sentences. It noted that it had never seen anything like Digiacomo's conduct and that Digiacomo had no hope of rehabilitation. The trial court reflected that the individual offense variables were inadequate to account for the extent of Digiacomo's heinous conduct. The court expressly considered making Digiacomo's two CSC-I sentences consecutive, but it concluded that a mere 37-year-and-4-month sentence was still inadequate to address the extent and nature of Digiacomo's conduct or to protect society and NR from Digiacomo. The trial court provided a thorough rationale for each sentence it imposed, including explaining why this was such an extraordinary case that multiple consecutive sentences were appropriate. *Norfleet*, 317 Mich App at 664-665. It also considered the various goals of sentencing. *Boykin*, 510 Mich at 183-184. As a result, we conclude that the trial court did not abuse its discretion in imposing a consecutive sentence.

Still, Digiacomo argues that the length of his combined sentences constitutes cruel or unusual punishment. He asserts that he will probably not outlive his sentences, so his sentence cannot advance the goal of rehabilitation. See *Fernandez*, 427 Mich at 339. However, the impossibility of rehabilitation is not dispositive if the other considerations weigh strongly enough in favor of the sentence. *Id*. For example, "[w]here a crime involves advance planning, such as premeditated murder and conspiracy, the possibility of deterring the potential wrongdoer from engaging in the illicit activity by a stringent penalty is more realistic than in crimes committed on impulse," and there may be a greater need to protect society from the offender and to impose retributive punishment. *Id*. For the reasons discussed, the other considerations weigh strongly in favor of the sentence imposed. Digiacomo's only substantive argument is his claim that recidivism is supposed to statistically decline with a person's age and that the rate of extrafamilial child

molestation declines after the age of 34. Yet, the record reflects that he was approximately 50 years old when he sexually assaulted NR and approximately 56 when he sexually assaulted DG. Thus, even accepting his statistical evidence at face value, it is apparent that Digiacomo is an exception to the trend. The trial court properly found no hope that Digiacomo had any rehabilitation potential and that the other considerations mandated a lengthy sentence.

Regarding the first consideration, the severity of the sentence compared to the gravity of the offense, Digiacomo argues that "what occurred here was not the most extreme" because "NR was 14 and had parents who cared about her—as did local police and prosecutors" and she "snuck out at night to meet Digiacomo and hid the phone he gave her." This victim-blaming argument flies in the face of the trial court's thorough explanation that it had never seen anything as extreme as Digiacomo's conduct. The first factor overwhelmingly weighs in favor of an extremely severe sentence.

Regarding the second consideration, comparing Digiacomo's penalty to penalties imposed on other offenders in Michigan, Digiacomo argues that there is no database of comparable sentences, but nonparolable life sentences are reserved for recidivist perpetrators of CSC-I against victims under the age of 13, only a few thousand people are serving sentences for second-degree murder, and many "life" sentences are parolable. Drawing comparisons is challenging because of the extent and severity of Digiacomo's conduct. It is true that NR was over the age of 13 and Digiacomo was not previously convicted of a CSC offense against a victim under the age of 13. However, the vast number of assaults, their brutality, and Digiacomo's predatory conduct of threatening NR and getting her addicted to drugs would seem somewhat analogous after Digiacomo had broken NR's ability to resist him through drugs, threats, and exploitation of her known fears and vulnerabilities. Furthermore, Digiacomo's later assaults of DG show that he had an opportunity to reform himself but chose not to do so. See *People v Poole*, 218 Mich App 702, 716; 555 NW2d 485 (1996).

Regarding the third consideration, comparing the penalty imposed in Michigan to the penalty imposed in other states, Digiacomo admits he has no data with which to make any such comparison. This comparison is likely irrelevant in any event because, as conceived, this test was used to determine whether a statutory minimum penalty was constitutional based, in part, on the kind of penalties mandated in other states. *People v Lorentzen*, 387 Mich 167, 179; 194 NW2d 827 (1972). Digiacomo does not challenge the constitutionality of MCL 750.520b(3), but rather challenges his actual sentences as imposed.

In sum, the trial court appropriately discounted the goal of rehabilitation and appropriately recognized that the extreme nature of Digiacomo's conduct warranted a lengthy sentence. Under the circumstances, Digiacomo's cumulative sentences were not cruel or unusual.

Digiacomo's convictions and sentences are affirmed. We remand to the trial court for the ministerial task of correcting Digiacomo's sentencing information report to reflect a score of zero points for OV 2. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado

-8-